[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO SET ASIDE VERDICT AND REQUEST FOR JUDGMENT NOTWITHSTANDING THE VERDICT
On February 5, 1984, the court accepted the jury' s verdict awarding the plaintiff damages against the defendants Albert Garafalo and Southport Manor Convalescent Center, Inc. (hereafter called "the defendants") in the amount of $5,001 for negligent misrepresentation, and $938,000 for breach of contract. The defendants have filed a motion to set aside the verdict and request for judgment notwithstanding the verdict. They also request entry of judgment for the defendants or a new trial. In addition to questioning prior rulings by the court and portions of the charge to the jury, they claim that the evidence does not support a finding of negligent misrepresentation or breach of contract, and that the damages awarded are excessive. CT Page 2892
In passing upon a motion to set aside a verdict, the trial court must view the evidence offered at trial in the light most favorable to sustaining the verdict. Wochek v. Foley,193 Conn. 582, 587; Geryk v. Atlantic Richfield Co., 19 Conn. App. 585,586-87. A motion for judgment notwithstanding the verdict is governed by the same considerations that warrant a directed verdict. Cruz v. Drezek, 175 Conn. 230, 232. Such a motion should be granted if the evidence establishes, as a matter of law, that the party who had obtained the verdict could not and was not entitled to prevail. Gesualdi v. Connecticut Co., 131 Conn. 622,627; Yeske v. Avon Old Farms School, 1 Conn. App. 195, 206. When considering the motion, the evidence must be given the most favorable construction in support of the verdict as is reasonably possible. Aksomitas v. Aksomitas, 205 Conn. 93, 100. When a verdict is challenged because of a lack of sufficient evidence, the issue raised is whether the trier of fact could reasonably have concluded, upon facts established and inferences permissibly drawn from them, that the cumulative effect of the evidence warranted the ultimate finding made. Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 112; Jonap v. Silver, 1 Conn. App. 550,559. In civil proceedings, the supportive evidence must satisfy the preponderance of the evidence standard. The verdict should not be set aside where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, but the court should not refuse to set it aside where the manifest injustice of the verdict is so plain as to clearly show that some mistake was made by the jury in the application of legal principles. A-G Foods, Inc. v. Pepperidge Farms, Inc.,216 Conn. 200, 206. Basically, the verdict should be set aside and judgment directed only if the court finds that the jury could not reasonably and legally have reached their conclusion. Bond Brook Association v. Norwalk, 198 Conn. 660, 667. A motion for judgment notwithstanding the verdict is a renewal of the motion for a directed verdict and decided in the same manner. Wood v. Bridgeport, 216 Conn. 604, 607.
The defendants claim that there was insufficient evidence on the claim of negligent misrepresentation. At trial, the plaintiff claimed negligent misrepresentation in two respects: (1) that the defendants represented that enough land would be sold to the plaintiff to operate a nursing home; and (2) that the defendants could convey good and marketable title to the property.
The jury was instructed in the charge that the zoning CT Page 2893 problem, namely that building coverage could not exceed 10 percent of a parcel of land, was not a defect in title and could not be the basis of a recovery by the plaintiff. This issue is more specifically discussed in the Memorandum of Decision on the issues tried to the court.
The evidence did support a finding of negligent misrepresentation as to Garafalo's statement to Foley before the contract was signed the defendants would sell enough land to Foley to operate the nursing home. The jury found, as shown by interrogatory #2, that the defendants made a negligent misrepresentation upon which the plaintiff relied that the parcel to be conveyed would be large enough to operate a nursing home under applicable governmental regulations. A buyer can recover for an innocent but negligent misrepresentation in the sale of real estate. Johnson v. Healy, 176 Conn. 97, 102; Richard v. A. Waldman Sons, 155 Conn. 343, 346-47; Clark v. Haggard, 141 Conn. 668,673. See also Restatement 2d of Torts (1979) 552.
The defendants claim that the fact that the parties signed a contract encompassing their discussions and agreements superseded any prior negligent misrepresentations by the defendants. Specifically they rely upon the answer to interrogatory #6 that the written contract covered the rights and obligations of the parties in connection with the purchase and sale of Southport Manor, superseding all prior written or oral agreements.[1]
A similar argument was made and rejected in Warman v. Delaney, 148 Conn. 469, 474. In a claim for misrepresentation, a tort claim, a plaintiff is not seeking to add to or change the terms of the written contract itself, but is claiming inducement to enter into the contract by material misrepresentations of material facts. This would be just as true of a negligent misrepresentation claim as a fraudulent misrepresentation claim. A jury could reasonably determine that Foley was induced to enter into the contract by the negligent statement of the defendants that they would sell him enough land to operate a nursing home.
When reviewing the amount of a verdict, the court determines whether the award made falls within permissible, and necessarily uncertain, limits of just damages, or whether its size so shocks the sense of justice as to compel the conclusion that it was the product of prejudice, partiality, corruption or mistake. Mather v. Griffin Hospital, 207 Conn. 125, 139; Campbell v. Gould, CT Page 2894194 Conn. 35, 39-40. The assessment of damages should be accepted unless the verdict is plainly exorbitant or excessive or is inadequate. Wochek v. Foley, 193 Conn. 582, 586. The conclusion that the jury simply exercised poor judgment is not a sufficient basis for setting aside the verdict. Id., 587. The damages recoverable for negligent misrepresentation are those necessary to compensate the plaintiff for the monetary loss to him of which the misrepresentation is a legal cause including (a) the difference between the value of what he has received in the transaction and the purchase price or other value given for the property, and (b) the pecuniary loss suffered as a consequence of the plaintiff's reliance upon the misrepresentation. Restatement of Torts, 2d 552B. However, the damages recoverable for negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant. Id.
In this case the negligent misrepresentation was discovered before the closing of title, and the plaintiff never purchased the property. Moreover, there was also no evidence as to what the value of the property would have been for the nursing home buildings on only 3.74 acres. Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. Expressway Associates II v. Friendly Ice Cream Corp. of Connecticut, 218 Conn. 474, 477.
The only expenses incurred by the plaintiff as a result of the misrepresentation which are supported by evidence at the trial was a $5,000 nonrefundable application fee. The jury was instructed that it could compensate the plaintiff for this expense either for misrepresentation damages or for breach of contract, but that it could not award it twice. The jury properly gave the plaintiff $1.00 as nominal damages and $5,000 for the application fee on the negligent misrepresentation claim.
If the evidence at trial supported a finding of breach of contract by the defendants, the jury's award of $938,000 as damages for breach of contract was supported by the evidence. In an action for breach of contract to convey land, the injured party recovers nominal damages for the breach, any expense which he has been subjected to in preparing to carry out the agreement and damages for loss of the benefit of the bargain, namely the difference between the price fixed in the contract and the fair market value of the land at the time the contract was to be performed, allowing for whatever has been paid for the purchase CT Page 2895 price, if anything. Gray v. Greenblatt, 113 Conn. 535, 537.
The purchase price under the contract was $5,250,000. The three accepted methods of valuation of real property are the comparable sales approach, the income approach and the reproduction cost approach. Four D's, Inc. v. Mattera, 25 Conn. App. 308,315; Whitney Center, Inc. v. Hamden, 4 Conn. App. 426,427-28. At trial, the plaintiff produced a commercial real estate appraiser, Dean Amidon, who testified that the value of the property was $7 million based upon the income approach. With that approach, the valuation took into account anticipated profits in the future from operation of the nursing home, which enhanced the value of the property at the date the contract was to be performed and was breached by the seller. The defendants argued that the fair market value of the property was the sales price, $5,250,000.
The trier has discretion as to which method of valuation to follow. Northeast Datacom, Inc. v. City of Wallingford,212 Conn. 639, 647. The trier can also choose a compromise figure between the positions of the parties as most accurately reflecting fair market value. Whitney Center Inc. v. Hamden, supra, 430; Four D's, Inc. v. Mattera, supra, 316. Here the jury in effect found the value of the property at the date of breach to be $6,188,000, a number which is reasonably supported by the evidence if the income approach was accepted by it.
The defendants claim that the answers to the interrogatories were conflicting and that the evidence does not support a conclusion of breach of contract despite the jury's finding interrogatory #11 that the defendants breached the contract with the plaintiff. Even though the evidence must be construed in favor of the plaintiff in an attempt to sustain the verdict, it must satisfy the preponderance of the evidence test. Coelho v. Posi-Seal International Inc., 208 Conn. 106, 112. The plaintiff had the burden of proof that the defendants breached the written contract.
The first page of the contract describes the "premises," as the Southport Manor Convalescent Center including a 140 bed nursing home, which is more particularly described on exhibit A attached to the contract. The description was prepared by The Huntington Company at the request of the defendants, and was attached to the contract as schedule A. It contains a metes and bounds description and states that "said parcel contains 3.74 acres." It also includes an easement across driveways that exist CT Page 2896 outside the boundaries of the described property. It is undisputed that the easement covered the accessway to the convalescent home from Mill Hill Terrace. The 3.74 acre parcel included the convalescent home, improvements, parking areas and driveways immediately surrounding it. The parcel described in the contract implemented the discussions of the parties as to the boundaries of the parcel that was to be cut out of the 10.09 acre parcel.
At the time they signed the contract, the parties thought that the 3.74 acres described in the contract was enough land to operate a nursing home. In fact, it was enough land to operate a nursing home, except for the maximum coverage provision in the zoning regulations, which was not discovered by the parties until December, 1984. The contract does not provide that the defendants will convey to the plaintiff "sufficient land to operate a nursing home" or any similar provision.
Under the written contract between the parties, the defendants are only required to convey the property described in schedule A, the 3.74 acre parcel. While a metes and bounds description takes precedent over a statement as to acreage, Elliott v. Weed, 44 Conn. 19, 24; Belden v. Seymour, 8 Conn. 19,25, the seller cannot be required to convey some other parcel not described in the contract, and the defendants would not breach the contract by refusing to sell property not encompassed within it. A promise not expressly made will not be read into a contract unless it arises by necessary implication from the terms of the agreement. Bradley Facilities, Inc. v. Burns, 209 Conn. 480, 492.
After the charge to the jury, the plaintiff's counsel claimed that the defendants could be found to have breached the contract in that: (1) defendants could not convey good and marketable title to the property described in the contract; (2) they failed and refused to convey enough land to operate a nursing home; and (3) there was a breach of an implied covenant of good faith and fair dealing by not conveying to the plaintiff a "lesser estate" of a 3.74 acre ground lease to cure the problem caused by the zoning regulations.
Since limitations imposed, by zoning were excepted from the contract, and restrictions imposed by governmental authority such as zoning regulations are not a defect affecting marketable title to property, Frimberger v. Anzellotti, 25 Conn. App. 401,409, the first claim of breach of contract has no merit. Even CT Page 2897 though contracts carry an implied covenant of good faith and fair dealing, that concept cannot be used to alter the terms of a written contract between the parties and create additional obligations which were not mutually agreed to or to achieve a result contrary to the clearly expressed terms of the contract. Verrastro v. Middlesex Mutual Insurance Co., 208 Conn. 179, 190. As discussed in the memorandum of decision on the issues tried to the court, the ground lease proposal is not a "lesser estate" under the facts of this case. Moreover, it would be unfair to the defendants for the court to order a reformation of the contract to allow a ground lease because that would not cure the zoning problem for the defendants. They would not be able to use the remaining six acres, which was a critical consideration for the agreement made by the parties whereby Foley would get 3.74 acres for $5,250,000 and the defendants would retain the remaining six acres to develop.
It should also be noted that the complaint does not allege breach of an implied covenant of good faith and fair dealing. The defendants had no legal obligation to modify the contract to give Foley what he wanted at the defendants' expense. This leaves the claim that there was a contractual requirement that the defendant sell to the plaintiff "sufficient land to operate a nursing home."
Taking the evidence and favorably construing it for the plaintiff, in the negotiations the plaintiff requested enough land to operate the nursing home, the defendants had no objection to this, and thought that the parcel created by the surveyor and incorporated into schedule A of the contract implemented Foley's request. The jury found, in answer to interrogatory #6, that the parties intended the written contract to cover all their rights and obligations and to supersede all prior agreements, written or oral. This brings into effect the parol evidence rule, namely that evidence outside of the written contract is not allowed to vary or contradict the terms of a written, integrated contract. TIE Communications, Inc. v. Kopp, 218 Conn. 281, 288. There are four recognized exceptions to the parol evidence rule; it can be offered (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. Id., 288, 289 citing Jay Realty, Inc. v. Ahearn Development Corp., 189 Conn. 52, 55-56. These exceptions are situations where the evidence: (1) does not CT Page 2898 vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated, or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing rounded in mistake or fraud. TIE Communications v. Cobb, supra, 289.
The plaintiff wants the contract description in schedule A to be altered to provide for an agreement to sell enough land to sell a nursing home rather than an agreement to sell the designated 3.74 acres. The problem with that position is that such an interpretation would vary or contradict the express terms of the contract because the parcel described in the notes and bounds description consisting of 3.74 acres is not the same as "sufficient land to operate a nursing home" because of the zoning problem. The claim requires a finding of a collateral oral agreement which does, in fact, vary the terms of the writing. There is no ambiguity as to the interpretation of the terms in the contract description. There is also nothing to show that the written contract does not contain the complete agreement between the parties since they agreed to schedule A as the land to be conveyed. The plaintiff is not attempting to cancel the contract and has disclaimed the equitable remedy of recission, so oral evidence is also inadmissible on the concept of mistake.
The defendants are also correct that even if the contract were construed to obligate them to convey to Foley "sufficient land to operate a nursing home" that it would violate the statute of frauds. The property described in the contract clearly is inadequate, to operate a nursing home because of the zoning problem. This means that "sufficient land to operate a nursing home" would have to be substituted for the description in schedule A. Standing alone, such a description clearly fails to satisfy the statute of frauds because the property to be conveyed cannot be determined from the contract itself without the use of parol evidence. Pigeon v. Hathaway, 156 Conn. 175, 181, 182. See also citations in the memorandum of decision on the issues tried to the court. The description in schedule A and any map references there do not assist the plaintiff because the written description contradicts the description of the land which the plaintiff claims is covered by the contract. The court cannot rewrite the contract for the parties. Foley v. Southport Manor Convalescent Center, Inc., 11 Conn. App. 530, 538. Defendants were only required to convey the land described in the contract itself, and not some altered or expanded version of it. CT Page 2899
In order to recover for breach of contract the plaintiff must show that the defendants failed to perform the contract when required, namely on the closing date or within a reasonable time thereafter, and that the plaintiff had fully performed his obligations under the contract, had tendered performance, or had some legal excuse for not performing. Ravitch v. Stollman Poultry Farms, Inc., 165 Conn. 135, 149; Federal Finance Co. v. Forman Properties, Inc., 135 Conn. 153, 157. Foley had the burden of proof by a preponderance of the evidence that the defendants refused to convey the property described in the contract. The record is silent as to whether the defendants refused to convey the 3.74 acres described in the contract after the zoning problem was discovered, and shortly thereafter the scheduled closing date arrived. What is clear is that the plaintiff would not accept a conveyance of the 3.74 acres because of the zoning problem. See interrogatory #9.
Assuming this was a good and sufficient excuse for failure to proceed with the sale in accordance with the contract terms, there was no evidence from which the jury could reasonably find that the defendants breached the contract, namely that they refused to convey fee simple title to 3.74 acres of land in December, 1984 or January 1985 and the plaintiff wanted to close pursuant to the contract. The evidence at trial was that Foley could not close on the land without the financing. His lender would not advance the funds because of zoning problems affecting use of the property if 3.74 acres were conveyed to the plaintiff. Repudiation of a contract occurs either by a statement that the promisor will not perform or by a voluntary, affirmative act that indicates inability, or apparent inability, to substantially perform the contract. Gilman v. Pedersen, 182 Conn. 582, 584. Only a party himself not in default has the right to claim that the other party's manifestation of an intention not to perform the contract constitutes a breach of the contract. Id. In short, since Foley was unwilling to accept a conveyance of fee simple title to 3.74 acres of land, and was not in a position to close on the contract himself, he cannot claim that the defendants breached the terms of the written contract to sell him the 3.74 acres. The evidence at trial, even when construed most favorably to the plaintiff, does not support the jury's finding that the defendants breached the contract. Foley's willingness to restructure the deal by having the defendants accept one of his subsequent proposals also did not justify a finding of breach of contract by the defendants, since they had no legal obligation to modify the CT Page 2900 existing, written contract.
The answers to some of the interrogatories are difficult to reconcile. In its answer to interrogatory #8, the jury in effect found that under the terms of the contract the plaintiff and the defendants did not agree or intend that the zoning restrictions were the responsibility of the plaintiff. Interrogatory #10 covered two issues, whether both parties were unaware of the zoning problem when the contract was signed and whether the contract was unable to be performed because of mutual mistake. In retrospect, these should have been separate questions and it is unclear whether the jury answered "no" to interrogatory #10 because it gave a negative answer to both issues, or because it thought that a positive answer to one issue and a negative answer to the other required the interrogatory to be answered "no." Arguably the jury thought that Garafalo was aware of the zoning problem when he signed the contract, so that there was no mutual mistake.
A finding of no mutual mistake, however, would not justify a conclusion that the defendants breached the written contract under which they were obligated to convey to the defendant marketable, fee simple title to the 3.74 acre parcel.
Assuming there was a unilateral mistake by Foley that the land described in the contract was large enough to operate a nursing home under zoning requirements, "the mistake of one only of the parties inducing him to sign a contract which, but for the mistake, he would not have entered into, may be a ground in some cases for cancelling the contract, but it cannot be a ground for reformation of it." Snelling v. Merritt, 85 Conn. 83, 101; Milford Yacht Realty Co. v. Milford Yacht Club, Inc., 136 Conn. 544,549. In this case there was only an executory contract, and in order to create the description the plaintiff wants, the contract would first have robe reformed, but reformation requires a mutual mistake and is an equitable remedy to avoid a result neither intended. Lopinto v. Haines, 185 Conn. 527, 532. Where reformation is based upon unilateral mistake of one party coupled with actual or constructive fraud or inequitable conduct on the part of the other party there must be clear and convincing evidence. Id. 533; Greenwich Contracting Co. v. Bonwit Construction Co., 156 Conn. 123, 126-27. In the answer to interrogatory #1 the jury found that the defendants did not make a fraudulent misrepresentation that the parcel to be conveyed would be large enough to operate a nursing home. In addition, CT Page 2901 reformation would not carry out the intent of the parties, namely that Foley could run a nursing home on the 3.74 acres and that the defendants could develop the remaining 6 acres with multi-family housing. Id. 127.
Without reformation of the contract by the court, applying equitable principles, there could only be breach of contract if the plaintiff wanted the land described in the contract and the defendants refused to convey it. Since Foley refused to accept a conveyance in accordance with the contract description (see answer to interrogatory #9) he cannot recover against the defendants on a breach of contract theory. The part of the verdict on this issue was against the evidence.
The motion to set aside the verdict is granted as to the award of damages of $938,000 for breach of contract under the sixth count of the complaint, but denied as to the finding of damages of $5,001 for negligent misrepresentation. Judgment shall enter for the plaintiff for $5,001. See Conn. Practice Book 321; Robinson v. Southern New England Telephone Co., 140 Conn. 414,421.
ROBERT A. FULLER, JUDGE